The **PEOPLE** of the State of Colorado,
Plaintiff–Appellee,

v.

Wayne Douglas **GLASSER**, Jr.,
Defendant–Appellant.

No. 09CA0514.

Colorado Court of Appeals,
Div. IV.

March 31, 2011.

Rehearing Denied May 19, 2011.

John W. Suthers, Attorney General, Deborah Isenberg Pratt, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

MS & M Law Office, Nicole M. Mooney, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge MILLER.

Defendant, Wayne Douglas Glasser, Jr., appeals the trial court's judgment of conviction and sentence on first degree sexual assault and second degree kidnapping charges. We affirm in part, reverse in part, and remand for resentencing.

## I. Background

According to the trial evidence, on the evening of November 27, 1996, defendant abducted the victim while she was walking home from work in Denver, pulling her by the neck into his van. Keeping a gun trained on her head, defendant removed the victim's clothing and raped her. After the assault, defendant drove the van behind a building, where he abandoned the victim next to a dumpster.

The next day, the victim called her sister, who called the police. The victim was taken to Denver Medical Center for a rape kit examination. A semen sample was recovered.

The initial investigation yielded no suspects, and the case was filed as inactive. Eight years later, the case was reopened, and eventually a DNA database search resulted in a DNA sample match to defendant.

Under the version of the statutes in effect in 1996, defendant was charged with aggravated first degree sexual assault, physical force and violence, § 18–3–402(1)(a), (3); aggravated first degree sexual assault, present threats, § 18–3–402(1)(b), (3); and second degree kidnapping, victim of sexual assault, § 18–3–302(1), (3). § 18–3–302(1), C.R.S. 2010; Ch. 171, sec. 1, § 18–3–402(1)(a)–(b), 1975 Colo. Sess. Laws 628; Ch. 151, sec. 2, § 18–3–402(3), 1985 Colo. Sess. Laws 666; Ch. 214, sec. 1, § 18–3–302(3), 1981 Colo. Sess. Laws 983. A Denver jury found him guilty on all counts. In response to an interrogatory, the jury found that defendant had used a deadly weapon during the sexual assault.

At sentencing, the trial court merged the two sexual assault convictions and, relying on the jury's deadly weapon finding, sentenced defendant in the aggravated range to thirty years in the Department of Corrections (DOC). Based on the same finding, the trial court also sentenced defendant in the aggravated range on the kidnapping count, imposing another thirty-year DOC sentence. The court ordered the sentences to run consecutively, followed by five years of parole.

## II. Analysis

Defendant challenges the trial court's (1) denial of his motion to suppress the DNA evidence collected in Arapahoe County, (2) admission of other acts evidence, (3) denial of his motion to dismiss based on a violation of the Uniform Mandatory Disposition of Detainers Act, §§ 16–14–101 to –108, C.R.S. 2010 (UMDDA), (4) admission of certain expert testimony, and (5) sentencing. We turn first to the suppression motion.

### A. Motion to Suppress DNA Evidence

Defendant claims that the trial court erred by denying his motion to suppress, among other things, the DNA evidence. Defendant contends that the trial court should have suppressed the DNA evidence used to identify him because it was obtained as the result of an illegal plea bargain. We are not persuaded.

Review in suppression cases is a mixed question of law and fact. *People v. Bonilla–Barraza*, 209 P.3d 1090, 1094 (Colo.2009). We review the trial court's conclusions of law de novo, and we defer to the trial court's findings of fact if competent evidence in the record supports them. *Id.*

In 1998, in separate cases filed in Arapahoe County, defendant pled guilty to sexual assault on a child and to sexual assault on an at-risk adult. The plea agreement provided for probation and suspended sentences. However, a statute then in effect required that "[a]ny person convicted of a crime of violence shall be sentenced . . . to a term of incarceration . . . *without suspension.*" § 18–1.3–406(1)(a), C.R.S.2010 (formerly codified at § 16–11–309(1)(a)) (emphasis added). Nonetheless, in accordance with the plea agreement, the Arapahoe County District Court sentenced defendant to concurrent terms of intensive supervised probation for twenty-five years, as well as consecutive

suspended sentences of eighteen months and sixteen years of incarceration in the DOC. (There is no indication in the record that the court or counsel recognized that the suspended sentences violated the statute.) As a condition of his probation, defendant provided a DNA sample. That sample led to his conviction in the present case.

After defendant violated the terms of his probation in the Arapahoe County cases and was incarcerated, he moved to correct the illegal sentence under Crim. P. 35(a). The Arapahoe County court granted the motion, vacated defendant's sentences, and ordered withdrawal of his guilty pleas in both cases.

Defendant then moved the Denver court to suppress all evidence derivative of his illegal sentence, including the DNA. The court denied the motion, holding that the basis for the Arapahoe County court's order was a statutory violation resulting in an illegal sentence rather than a constitutional violation and declining to extend the exclusionary rule beyond police misconduct.

■ We agree that suppression of evidence is generally available as a remedy only for a constitutional violation but not for a statutory violation. *People v. Shreck*, 107 P.3d 1048, 1054 (Colo.App.2004); *see also People v. Shinaut*, 940 P.2d 380, 383 (Colo. 1997); *People v. McKinstry*, 843 P.2d 18, 20 (Colo.1993); *People v. Bowers*, 716 P.2d 471, 473 (Colo.1986).

■ Here, however, the constitutional violation defendant alleges is not the taking of the DNA sample or the imposition of an illegal sentence. Rather, he claims that the prosecution violated his constitutional due process rights when it promised a suspended sentence in consideration for his guilty plea in the Arapahoe County cases, a promise that could not be fulfilled because of its illegality.

■ Due process requires that a guilty plea be voluntary, knowing, intelligent, and free from misrepresentation and the making of unfulfilled or unfulfillable promises. *Santobello v. New York*, 404 U.S. 257, 261–62, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *Craig v. People*, 986 P.2d 951, 961 (Colo.1999) (a plea agreement must be attended by constitutional safeguards to ensure that a defendant receives the performance that he or she is due); *St. James v. People*, 948 P.2d 1028, 1032 (Colo.1997) ("When a defendant reasonably and detrimentally relies on the prosecution's promises in a plea agreement, due process requires the enforcement of the plea agreement."); *People v. Fisher*, 657 P.2d 922, 927 (Colo.1983) (the Due Process Clause of the Fourteenth Amendment requires enforcement of the prosecution's promise to a defendant during a criminal prosecution).

Here, as part of defendant's plea agreement in Arapahoe County, the prosecutor promised a suspended sentence and the trial court entered that sentence without objection by defense counsel. That sentence was illegal under the predecessor to section 18–1.3–406(1)(a), which precluded the giving of a suspended sentence for the offenses to which defendant pled guilty. The suspended sentence component was obviously a material term of the plea agreement. Thus, the guilty plea was obtained in violation of defendant's constitutional rights to due process. However, because the agreement violated the law, it was not subject to specific performance. *Craig*, 986 P.2d at 959. Instead, the Arapahoe County District Court held the guilty plea invalid, vacated the sentences, and ordered the pleas withdrawn. *See id.; Chae v. People*, 780 P.2d 481, 486 (Colo.1989).

Defendant provided the DNA sample draw as a condition of the probation component of his sentence. The DNA sample would not have been taken but for defendant's agreement to submit to it as a condition of probation. We therefore agree with defendant that this sample, which matched the DNA found in the semen sample collected during the rape kit examination of the victim, derived from the unconstitutionally obtained plea and conviction that violated his due process rights under the Fourteenth Amendment. The question remains, however, whether the DNA sample taken from defendant is subject to the exclusionary rule. We, like the trial court, conclude it is not.

■ The exclusionary rule is a judicially created remedy designed to safeguard Fourth Amendment rights through its deterrent effect. *United States v. Leon*, 468 U.S.

897, 907, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *People v. Blehm*, 983 P.2d 779, 794 (Colo.1999). Importantly, the rule is *not* a personal constitutional right of the party aggrieved; its use is not warranted where it would not result in appreciable deterrence. *Herring v. United States*, 555 U.S. 135, 140–41, 129 S.Ct. 695, 700, 172 L.Ed.2d 496 (2009); *Blehm*, 983 P.2d at 794 (citing *United States v. Janis*, 428 U.S. 433, 454, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976)).

■ "The exclusionary rule was crafted to curb police misconduct rather than judicial misconduct...." *Herring*, 555 U.S. at 142, 129 S.Ct. at 701 (citing *Arizona v. Evans*, 514 U.S. 1, 15, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995) (declining to apply exclusionary rule when evidence was seized in violation of Fourth Amendment because of computer errors by court employees)); *see also United States v. McCane*, 573 F.3d 1037, 1045 (10th Cir.2009) ("the reach of the exclusionary rule does not extend beyond police conduct to punish the mistakes of others"); *Blehm*, 983 P.2d at 795 (declining to apply rule when police acted objectively reasonably on computer mistakes committed by courts). The United States Supreme Court has declined to extend the exclusionary rule to searches based on good faith compliance with legally insufficient court-issued warrants. The Court has explained that there is neither (a) evidence suggesting that lawlessness by judges requires exclusion of evidence collected as a result of their errors, nor (b) any basis to believe that exclusion of evidence seized pursuant to erroneous warrants (and presumably other erroneous court rulings) would have a significant deterrent effect on the issuing judge. *Leon*, 468 U.S. at 916, 104 S.Ct. 3405; *Evans*, 514 U.S. at 11, 115 S.Ct. 1185; *see also Blehm*, 983 P.2d at 795.

■ Further, the strength of deterrence as a justification for the exclusionary rule varies with the culpability of the law enforcement conduct. *Herring*, 555 U.S. at 141–43, 129 S.Ct. at 701. Thus, " 'an assessment of the flagrancy of the police misconduct constitutes an important step in the calculus' of applying the exclusionary rule." *Id.* (quoting *Leon*, 468 U.S. at 911, 104 S.Ct. 3405). The Supreme Court has therefore reserved application of the exclusionary rule for cases where it "serves to deter deliberate, reckless, or grossly negligent conduct," as opposed to "mistakes [that] are the result of negligence." *Herring*, 555 U.S. at 144, 147, 129 S.Ct. at 702, 704.

We conclude that the trial court did not err in declining to exclude defendant's DNA sample and any related evidence because, for two reasons, this case does not implicate the exclusionary rule. First, the constitutional error at issue did not involve the police. Defendant emphatically stated in his reply brief, and we agree, that "the act of taking the DNA was not the unconstitutional act." Thus, the only constitutional violation at issue in this case is the violation of due process related to the improperly obtained plea. That error resulted from a mistake in the plea agreement that was signed by the prosecution but also approved by defense counsel and accepted by the district court. Defendant has not cited us to any decisions applying the exclusionary rule to such a constitutional violation, and we are aware of none. And, as shown above, neither the United States nor the Colorado Supreme Court has extended the application of the exclusionary rule beyond police misconduct.

Second, the mistake in this case fails the "assessment of flagrancy" test. The prosecutor's conduct can hardly be considered flagrant, given that defense counsel approved and the trial court accepted the pleas. There is no other indication that the prosecutor acted deliberately, recklessly, or grossly negligently to deceive defendant. In order to trigger the exclusionary rule, conduct "must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring*, 555 U.S. at 144, 129 S.Ct. at 702. The conduct at issue does not rise to that level, *see id.*, and application of the exclusionary rule here would not result in appreciable deterrence.

We therefore conclude that the trial court did not err in declining to extend the exclusionary rule to the DNA evidence collected as a result of the due process denial in the Arapahoe County cases.

### B. Other Acts Evidence

Defendant contends that the trial court erred by admitting evidence of other sexual acts. We disagree.

▮ Trial courts have broad discretion to determine the admissibility of evidence. *People v. Rath,* 44 P.3d 1033, 1043 (Colo. 2002). We review a trial court's decision for abuse of discretion, and we will reverse only upon a showing that the ruling was manifestly arbitrary, unreasonable, or unfair. *Id.*

Defendant argues that the trial court erred by admitting evidence of the two sexual encounters involved in the Arapahoe County cases, which occurred within three days of each other and seven months after the sexual assault in this case. During the first encounter, defendant offered a twenty-year-old woman with Down syndrome a ride in his truck. Once the woman was in the truck, and without her consent, defendant kissed her, caressed her breasts over her shirt, and rubbed her back, shoulders, and thigh. He then reached up her shirt and tried to reach down her pants while she asked him to stop.

In the second encounter, defendant offered a fourteen-year-old girl and a sixteen-year-old girl, who were on foot, a ride in his truck. Before arriving at their destination, defendant took the first girl's hand, put it in his pants, and forced her to touch his penis.

The trial court admitted this evidence for the purposes of showing common plan, scheme, and design, identity, motive, guilty knowledge, or intent, or of rebutting the defense of consent.[1]

Rule 404(b) provides that evidence of other crimes, wrongs, or acts is inadmissible to prove the character of a person to show that he acted in conformity therewith on a particular occasion. CRE 404(b). However, other acts evidence may be admitted for other purposes, including, but not limited to, proof of identity, motive, intent, knowledge, plan, or lack of consent. *Id.;* § 16–10–301(3), C.R.S.2010 (such evidence is admissible in prosecutions for sexual behavior "for any purpose other than propensity, including: [r]efuting defenses, such as consent").

▮ Whether other acts evidence is admissible is based on a four-part test: (1) the evidence must relate to a material fact; (2) it must be logically relevant; (3) its logical relevance must be independent of the intermediate inference, prohibited by CRE 404(b), that the defendant was acting in conformity with a bad character; and (4) the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice. *Yusem v. People,* 210 P.3d 458, 463 (Colo.2009); *Rath,* 44 P.3d at 1038; *People v. Spoto,* 795 P.2d 1314, 1318 (Colo.1990).

▮ Defendant does not argue that the other acts evidence fails to meet the first three elements of the test. Thus, we address only whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. In this connection, we note that the Colorado General Assembly has declared that relevant other acts evidence is generally admissible in sexual assault cases:

> The general assembly finds that such evidence of other sexual acts is typically relevant and highly probative [in the prosecution of sexual offenses], and it is expected that normally the probative value of such evidence will outweigh any danger of unfair prejudice, even when incidents are remote from one another in time.

§ 16–10–301(1), C.R.S.2010.

▮ Evidence of other similar acts is admissible in sexual assault prosecutions for the limited purpose of showing, among other things, modus operandi, common plan, scheme, or design, and lack of consent. *See id.* (finding by General Assembly that sex offenders often commit numerous offenses "through similar methods or by common design"); *see also Rath,* 44 P.3d at 1042 ("Other-crimes evidence demonstrating a common design or modus operandi has been admitted in prosecutions for sexual assault not only to prove who committed the crime but also to

---

1. We note that our supreme court disapproves of such laundry lists of potential purposes without the articulation of a precise evidential hypothesis for each one. *Yusem v. People,* 210 P.3d 458, 464 (Colo.2009). Defendant does not, however, challenge the admission of the other acts evidence on this basis.

prove that the alleged sex act actually occurred."); *People v. Everett*, 250 P.3d 649, 653–55 (Colo.App.2010) (admitting evidence of another sexual assault to refute defense of consent).

Defendant did not dispute at trial that he had sex with the victim but defended primarily by claiming she consented. The other acts evidence admitted tends to refute that defense by showing that defendant targeted vulnerable young women on foot and used his vehicle to isolate them to facilitate his forcible infliction of sexual contact. Because this evidence is highly probative of the victim's lack of consent, the similarity of the prior acts supports their admission. *See Rath*, 44 P.3d at 1041–43 (defendant's technique of isolating vulnerable females in his vehicle for the purpose of sexual gratification was sufficiently similar to the act charged, even though two of the four prior sex acts did not result in penetration); *Everett*, 250 P.3d at 658 (upholding admission of other act evidence for the purpose of showing the victim's lack of consent in a sexual assault case).

Affording the other acts evidence "the maximum probative value attributable by a reasonable fact finder and the minimum unfair prejudice to be reasonably expected," *Rath*, 44 P.3d at 1043, we conclude that the trial court did not err in admitting evidence of the two similar acts.

### C. Motion to Dismiss Under UMDDA

■ Defendant contends that the trial court erred by denying his motion to dismiss based on a violation of the UMDDA. Once again, we disagree.

■ Where a UMDDA provision is applied to undisputed facts, the question is one of law, which we review de novo. *People v. Carr*, 205 P.3d 471, 473 (Colo.App.2008). However, where the facts are disputed, we review the trial court's decision for an abuse of discretion. *Id.; see also People v. Mascarenas*, 666 P.2d 101, 106 (Colo.1983). Because the parties dispute whether there was prompt notification of the detainer and whether any delay in notice prejudiced de-

fendant, we review the trial court's decision for an abuse of discretion.

Section 16–14–102(2), C.R.S.2010, provides: It is the duty of the superintendent of the institution where the prisoner is confined to promptly inform each prisoner, in writing, of the source and nature of any untried indictment, information, or criminal complaint against him of which the superintendent has knowledge, and of the prisoner's right to make a request for final disposition thereof.

The prisoner may file a written request for a final disposition of the charges. § 16–14–102(1), C.R.S.2010. The superintendent must forward this request to the court and the prosecutor, § 16–14–103, C.R.S.2010, and a trial must occur within 180 days after receipt of the request. § 16–14–104(1), C.R.S. 2010. If the trial does not occur within that period, the court must dismiss the charges with prejudice. *Id.*

■ Automatic dismissal for delayed notice is required only if the prisoner is not informed of the detainer within one year after filing. § 16–14–102(3), C.R.S.2010. Otherwise, a violation of the prompt notification requirement entitles a defendant to a dismissal of the charges *unless* the prosecution can demonstrate a lack of prejudice as a result of that violation. *People v. Higinbotham*, 712 P.2d 993, 1001 (Colo.1986). Because we hold that the prosecution has shown that any delay in notification did not prejudice defendant, we do not determine whether the notification was prompt.

■ The primary purpose of the UMDDA is to "provide a mechanism for prisoners to insist upon speedy and final disposition of untried charges that are the subjects of detainers so that prison rehabilitation programs initiated for the prisoners' benefit will not be disrupted or precluded by the existence of these untried charges." *Id.* at 997. In light of this purpose, the prosecution bears the burden to prove that the defendant was not prejudiced by the failure to give prompt notice. *Id.* at 998. Prejudice of the type contemplated in *Higinbotham* includes negative effects on the terms and conditions of the prisoner's incarceration,

possibility of parole, level of security, eligibility for work and athletic programs, and release for visits to relatives' funerals. *Id.* at 997 (citing *United States v. Ford*, 550 F.2d 732, 737–40 (2d Cir.1977), *aff'd sub nom. United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978)). It also contemplates the implications for the defendant's prison rehabilitation programs and the impact on the defendant's right to a speedy trial. *Id.* at 998.

Defendant contends that the delayed notification prejudiced him in the following ways:

• It required more frequent transport from the Fremont Correctional Facility to the Denver County detention facilities. The trial court, however, found that this transportation amounted to nothing more than what would have been necessary for the current proceedings regardless of any delay in notification and that, therefore, it did not prejudice defendant. We conclude that the trial court did not abuse its discretion in reaching these findings.

• The delay detrimentally affected the terms and conditions of his confinement because he was classified as "medium" rather than "low" risk. Defendant's case manager testified that the Fremont Correctional Facility imposes a point system to determine the inmates' privileges and classifications. Ten points were imposed on defendant for the detainer, but the extra points did not affect either his status as "medium" risk or his access to educational, recreational, or rehabilitation programs. They also had no effect on defendant's housing options, eligibility for parole, ability to work outside the facility, employment access, daily movement, or level of supervision. The trial court found this testimony credible and concluded that any delay in notification did not prejudice defendant with regard to the terms and conditions of his confinement. Again, we perceive no abuse of discretion.

• The alleged delay violated his speedy trial rights. However, the trial court scheduled a trial five months after the arraignment date. This was well within the 180 days required for a speedy trial. Accordingly, the trial court did not abuse its discretion in

concluding that any delay in notification did not prejudice defendant's speedy trial rights.

• His wife passed away while the case was pending, thus preventing him from presenting her testimony at trial. Defendant does not describe on appeal the subject of any such testimony. In the trial court, defense counsel explained only that the defense was unable to interview defendant's wife to determine if she could provide an alibi. However, any such testimony would not have aided defendant because at trial he conceded that he had sex with the victim. Therefore, the inability to offer any alibi testimony from his wife did not prejudice defendant.

Thus, even if we assume the "prompt notification" requirement under the UMDDA was violated, the prosecution has proven that defendant was not prejudiced by the delay. Accordingly, the record supports the trial court's findings and conclusions, and the trial court did not err in denying defendant's motion to dismiss.

### D. Expert Testimony

■ Defendant contends that the trial court erred by allowing the People's expert witness to testify. We are not persuaded.

During trial, the prosecution sought to present an expert who would testify as to sexual assault victim trauma issues and dynamics. Following voir dire examination, defense counsel objected both to her qualification as an expert and to the substance of her testimony, claiming that her testimony was irrelevant, not helpful to the jury, and inadmissible under CRE 403. The trial court admitted the testimony, concluding that the expert was qualified and that her testimony regarding the typical behavior of a sexual assault victim would be helpful to the jury. Defendant argues that the prejudicial nature of this testimony outweighs its usefulness to the jury.

■ A trial court has broad discretion to determine the admissibility of expert testimony. *Golob v. People*, 180 P.3d 1006, 1011 (Colo.2008). We review a trial court's decision for an abuse of discretion and will overturn it only if it is "manifestly erroneous."

*Id.; People v. Whitman,* 205 P.3d 371, 382 (Colo.App.2007).

CRE 702 governs the admission of expert testimony. *See People v. Shreck,* 22 P.3d 68, 70 (Colo.2001). In determining whether to admit expert testimony, the trial court must "focus on the reliability and relevance of the proffered evidence" and determine (1) the reliability of the scientific principles, (2) the qualifications of the witness, (3) the usefulness of the testimony to the jury, and (4) whether the evidence satisfies a Rule 403 analysis. *Id.*

Expert testimony is not permitted to bolster a victim's credibility, but experts may testify concerning whether a victim's behavior or demeanor is consistent with the typical behavior of victims of abuse. *See, e.g., People v. Hampton,* 746 P.2d 947, 951 (Colo.1987) (admitting expert testimony when it was limited in scope, was expressed in general terms, and did not address the victim's credibility), *abrogated on other grounds by Shreck,* 22 P.3d at 77; *see also People v. Jenkins,* 83 P.3d 1122, 1127 (Colo.App.2003) (admitting a psychologist's testimony that a victim's behavior was consistent with that of an assault victim where it did not address the specific victim's credibility). Specifically, expert testimony about the general behavior of sexual assault victims may be helpful to the jury and may therefore be admissible. *Whitman,* 205 P.3d at 383; *see also People v. Fasy,* 829 P.2d 1314, 1317–18 (Colo.1992) (holding that child psychology expert's testimony assisted the jury and was admissible when it did not address the sexual assault victim's credibility but instead asserted that the victim's symptoms were consistent with posttraumatic stress disorder); *Hampton,* 746 P.2d at 952 (holding that expert testimony was admissible where it was limited in scope and was not used to establish that a crime had been committed); *People v. Baenziger,* 97 P.3d 271, 275 (Colo.App.2004) (holding that expert testimony explaining typical reactions of rape victims was helpful to the jury); *People v. Morrison,* 985 P.2d 1, 4 (Colo.App.1999) (holding that testimony was admissible where the expert did not testify as to the victim's credibility), *aff'd,* 19 P.3d 668 (Colo.2000).

Here, the expert's testimony was not unduly prejudicial. It was limited in scope, and she testified generally about the reactions of sexual assault victims, explaining the science behind victims' delayed reporting or faulty memories. She clearly stated that she was unaware of the facts of this particular case and had never counseled the victim. She did not offer her opinion as to this victim's credibility or whether this victim had been sexually assaulted.

Furthermore, the expert's testimony was helpful to the jury. During cross-examination, defense counsel attacked the victim's credibility by challenging her memory, her sequencing of events, her delay in reporting the assault, and the inconsistency in her story. The expert's testimony as to the general behavior of sexual assault victims therefore may have helped the jury understand why such a victim may delay reporting an incident or remember only fragments of an assault. Accordingly, the testimony was relevant, helpful to the jury, and more probative than prejudicial. The trial court did not abuse its discretion in admitting the expert testimony.

### E. Sentencing

#### 1. Consecutive Sentences

Defendant contends that the trial court erred by imposing consecutive rather than concurrent sentences. We disagree.

We review a trial court's decision to impose consecutive sentences for abuse of discretion. *People v. Bass,* 155 P.3d 547, 554 (Colo.App.2006). We must affirm the trial court's decision if there is any evidence in the record to support the findings that separate acts support each of the two convictions. *People v. Muckle,* 107 P.3d 380, 383–84 (Colo. 2005).

Generally, when a defendant is convicted of multiple offenses, the sentencing court has discretion to impose either consecutive or concurrent sentences. *Bass,* 155 P.3d at 554. However, concurrent sentences are required for offenses committed against a single victim when (1) the counts are based on the same act or series of acts arising from

the same criminal episode; and (2) the evidence supporting the counts is identical. § 18–1–408(3), C.R.S.2010; *see also Bass,* 155 P.3d at 554. The mere possibility that the jury may have relied on identical evidence in returning more than one conviction does not trigger mandatory concurrent sentencing. *Muckle,* 107 P.3d at 383; *Bass,* 155 P.3d at 554. Rather, the trial court's discretion to impose consecutive or concurrent sentences remains intact if the trial court finds that the multiple counts are not supported by identical evidence. *Qureshi v. District Court,* 727 P.2d 45, 47 (Colo.1986); *see also Muckle,* 107 P.3d at 384.

▆ To determine whether the evidence is identical, a court must decide whether the separate convictions were based on more than one distinct act and, if so, whether those acts were separated by time and place. *Compare Juhl v. People,* 172 P.3d 896, 901–03 (Colo.2007) (holding that the evidence was identical because it was a single collision that resulted in serious bodily injury to the victim); *People v. O'Shaughnessy,* 275 P.3d 687, 697 (Colo.App.2010) (*cert. granted* Oct. 18, 2010) (holding that all three offenses were based on a single criminal episode lasting less than sixty seconds when defendant forced the victim, who was loading groceries in her car, into the driver's seat at knifepoint, demanded money, stabbed her, and left), *with Muckle,* 107 P.3d at 383 (holding that shots were sufficiently distinguishable from each other because one hit the victim in the abdomen while he was seated and the other hit the victim in the back of his arm while he was moving away); *Qureshi,* 727 P.2d at 47 (holding that there was not identical evidence when the defendant first attacked the victim in the kitchen by stabbing her in the abdomen and later attacked her in the bathroom by aiming for her throat or heart and hitting her hand).

Here, the trial court found that the kidnapping greatly increased the risk and danger of the sexual assault and was therefore a separate offense. Evidence presented established that defendant seized the victim while she was walking on the sidewalk and pulled her into his van. He then assaulted her in the enclosed space of the van, away from the public eye. Therefore, like the circumstances of *Muckle* and *Qureshi,* the kidnapping here occurred at a different time and in a different place than the sexual assault. The entire event lasted approximately twenty minutes, much longer than the sixty seconds in *O'Shaughnessy.* Accordingly, the two convictions were not based on identical evidence.

Because there is evidence in the record that separate acts and evidence support each of the two convictions, we conclude the trial court did not abuse its discretion by imposing consecutive sentences.

### 2. Aggravated Sentence for Kidnapping

▆ We agree with defendant's contention that the trial court erred in imposing an aggravated sentence for the kidnapping charge.

As noted above, the jury found that defendant had used a deadly weapon during the commission of the sexual assault. However, the jury did not find that defendant used the deadly weapon during the kidnapping, which, as discussed in the preceding section, involved acts and evidence separate from the sexual assault. Nevertheless, the trial court found that the use of the weapon was an extraordinary circumstance that justified an aggravated sentence for kidnapping and sentenced defendant to thirty years in the DOC on that charge.

We review a trial court's sentencing decision for abuse of discretion. *People v. Hoover,* 165 P.3d 784, 802 (Colo.App.2006). However, we review constitutional challenges to sentencing de novo. *Misenhelter v. People,* 234 P.3d 657, 660 (Colo.2010).

Under the statutory scheme in effect at the time of the kidnapping, the presumptive range for defendant's kidnapping conviction—a class 2 felony—was eight to twenty-four years. § 18–1.3–401(1)(a)(V)(A), C.R.S. 2010 (formerly codified at § 18–1–105(1)(a)(V)(A)). The presence of certain enumerated extraordinary circumstances required the court to impose an aggravated sentence. *See* § 18–1.3–401(8)(a), C.R.S.2010 (substantially similar to former § 18–1–105(9)(a)). However, the statute allowed the

court to consider aggravating circumstances other than those enumerated as the basis for sentencing a defendant to a term greater than the maximum in the presumptive range, so long as the court "ma[de] specific findings on the record of the case, detailing the specific extraordinary circumstances" that justified a greater sentence. § 18–1.3–104(7) & (8)(c), C.R.S.2010 (formerly codified at § 18–1–105(7) & (9)(c)); *see also People v. Leske,* 957 P.2d 1030, 1042–43 (Colo.1998); *People v. Fiske,* 194 P.3d 495, 496 (Colo.App.2008). The aggravated sentence could not exceed twice the maximum term authorized in the presumptive range—forty-eight years. *See* § 18–1.3–401(8)(a), C.R.S.2010 (substantially similar to former § 18–1–105(9)(a)).

However, the Sixth Amendment to the United States Constitution requires that, other than a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum be submitted to a jury and proved beyond a reasonable doubt. *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The "statutory maximum" under *Apprendi* includes the maximum sentence a judge may impose based only on facts reflected in a jury verdict or admitted by the defendant. *Blakely v. Washington,* 542 U.S. 296, 303, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

Specifically, a judge may impose an aggravated sentence based on (1) facts found by the jury; (2) facts admitted by the defendant; (3) facts found by the judge under the defendant's stipulation to judicial fact finding; and (4) facts of prior convictions. *Lopez v. People,* 113 P.3d 713, 723 (Colo.2005). The first three types of facts are considered "*Blakely*-compliant," while the fourth type of fact is considered "*Blakely*-exempt." *Id.* Only one *Blakely*-compliant or *Blakely*-exempt fact is required to support an aggravated sentence. *People v. Misenhelter,* 214 P.3d 497, 501 (Colo.App.2009), *aff'd,* 234 P.3d 657 (Colo.2010).

Here, the trial court erred by aggravating the kidnapping sentence based on the jury's finding that defendant used a deadly weapon during the sexual assault. Because the jury did not specifically find that defendant used the weapon during the kidnapping, the weapon's use was neither a *Blakely*-compliant nor a *Blakely*-exempt fact. Thus, the trial court erred by considering the deadly weapon in the context of the kidnapping sentence.

The trial court discussed several other potentially aggravating or mitigating circumstances during the sentencing hearing. However, the court did not make specific findings as to which factors were aggravating and which factors were mitigating or as to which factors applied to the kidnapping charge and which applied to the sexual assault charge. Accordingly, we reverse the kidnapping sentence and remand for resentencing. On remand, the court may consider any relevant *Blakely*-compliant or *Blakely*-exempt facts. The court must make specific findings as to any extraordinary aggravating circumstances it finds that pertain to the kidnapping sentence.

### III. Conclusion

The judgment of conviction of sexual assault and kidnapping and the sexual assault sentence, as well as the imposition of consecutive sentences, are affirmed. The kidnapping sentence is reversed, and the case is remand for resentencing on that count.

Judge RUSSEL and Judge KAPELKE * concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. I, § 5(3), and

§ 24–51–1105, C.R.S.2010.