Opinion by JUDGE TAUBMAN
¶ 1 Defendant, James Edward Patton, appeals the judgment of conviction entered on a jury verdict finding him guilty of one count of the unauthorized use of a financial instrument. He also appeals his sentence on the theft conviction and the imposition of consecutive sentences for the theft and unauthorized use convictions. We affirm the conviction and vacate and remand the theft count for resentencing. We also vacate the imposition of consecutive sentences.
I. Background
¶ 2 On December 21 and 22, 2009, Patton purchased over $8000 worth of consumer electronics from Ultimate Electronics using a Wells Fargo debit card that was issued to him. The card was declined during the transaction, and Patton used a false override authorization code to force the sale. Ultimate Electronics then received a "charge-back" from Wells Fargo, meaning it was not paid for the purchase.
¶ 3 At trial, a Wells Fargo representative testified that the card had been cancelled on December 9, 2009, when Patton called the bank and reported that he had never received the card nor made any purchases on it. The representative also testified that the bank employee would have informed Patton that the card was cancelled, although there was no record that Patton had been so advised. The representative also testified that the bank would not have given an override code for the card.
¶ 4 Patton raises four contentions on appeal: (1) the trial court erred in denying his motion for judgment of acquittal because the prosecution was unable to prove the notice element of unauthorized use of a financial instrument; (2) the trial court erred by imposing consecutive sentences because the theft and unauthorized use of financial instrument counts were proved by identical evidence; (3) the court abused its discretion by refusing to afford Patton the benefits of amendatory sentencing legislation for the theft; and (4) the court improperly entered the theft conviction for a class 4 felony without a finding of actual value by the jury.
¶ 5 We disagree with Patton's first contention and affirm the conviction for unauthorized use. We agree with Patton's second contention and vacate the imposition of consecutive sentences. We also agree with Patton's third contention that he should benefit from the amendatory legislation to reduce the severity of the theft offense, and remand for resentencing. We disagree with his final contention.
II. Denial of Judgment of Acquittal
¶ 6 Patton contends that the trial court abused its discretion and erred by denying *1156 his motion for judgment of acquittal after the prosecution failed to prove that he received notice in person or in writing that the debit card had expired or had been revoked or cancelled as required by the notice element of the unauthorized use of a financial instrument statute. We disagree.
A. Standard of Review
¶ 7 We evaluate the denial of a motion for judgment of acquittal by conducting a de novo review of the record to determine whether the evidence before the jury was sufficient to sustain the conviction. Montes-Rodriguez v. People , 241 P.3d 924, 927 (Colo. 2010). When the basis for denial was the trial court's interpretation and application of a statute, review is similarly de novo. Bostelman v. People , 162 P.3d 686, 690 (Colo. 2007).
B. Applicable Law
¶ 8 Under section 18-5-702(1), C.R.S. 2016, a person commits unauthorized use of a financial instrument if he or she has notice that a device has expired, has been revoked, or has been cancelled. Under the statute, notice "includes either notice given in person or notice given in writing to the account holder." § 18-5-702(2). The purpose of the statute is to prevent fraud in financial transactions. People v. Trujillo , 2015 COA 22, ¶ 30, 369 P.3d 693, 698.
¶ 9 When a court interprets a statute, its goal is to give effect to the intent of the legislature. Montez v. People , 2012 CO 6, ¶ 7, 269 P.3d 1228, 1230. Words and phrases must be interpreted according to their plain meanings. People v. Pipkin , 762 P.2d 736, 737 (Colo. App. 1988). The court reads statutory words and phrases in context and construes them according to the rules of grammar and common usage. Doubleday v. People , 2016 CO 3, ¶ 19, 364 P.3d 193, 196. It must avoid "constructions that would render any words or phrases superfluous or lead to illogical or absurd results." Id.
¶ 10 In interpreting an ambiguous statute, we may consider the legislative declaration or purpose. § 2-4-203(1)(f), C.R.S. 2016. Further, if the language of a statute is unclear, the court may rely on several indicators, including the objective that the legislature sought to obtain by its enactment, the circumstances under which it was adopted, and the consequences of a particular construction. See People v. Baer , 973 P.2d 1225, 1228 (Colo. 1999).
C. Analysis
¶ 11 At trial, Patton moved for a judgment of acquittal on the unauthorized use count, asserting that the prosecution failed to present evidence to satisfy the notice element of the statute, because the statute requires that notice be given in person or in writing. The court denied the motion. During deliberations, the jury sent out a question for the court asking whether a phone communication satisfied the definition of "in-person" notice. The court advised the jury that the statutory definition of "notice" required notice to be given in person or in writing. It then advised the parties that a deeper reading of the statute had caused it to believe that it had erred in its denial of Patton's motion, because the statutory definition of "notice" appeared to be exclusive. The court then advised Patton's attorney that it would anticipate a motion for judgment notwithstanding the verdict if the jury convicted on that count. Upon conviction by the jury, Patton moved for a judgment notwithstanding the verdict, and the court denied his motion.
¶ 12 Whether notice under section 18-5-702(2) is limited to notice given in person or in writing is a question of first impression.
¶ 13 We conclude that the statute does not require notice only in person or in writing, because the word "includes" is a word that is meant to extend rather than limit. Pipkin , 762 P.2d at 737 ; see also Lyman v. Town of Bow Mar , 188 Colo. 216, 222, 533 P.2d 1129, 1133 (1975) ("[T]he word 'include' is ordinarily used as a word of extension or enlargement.").
¶ 14 Patton argues that the term "includes" makes the definition exclusive and exhaustive; however, the statute would have used the term "means" to limit acceptable forms of notice to those in person and in *1157 writing. "To hold otherwise here would transmogrify the word 'include' into the word 'mean.' " Lyman , 188 Colo. at 222, 533 P.2d at 1133 ; see also People v. James , 40 P.3d 36, 47 (Colo. App. 2001) ("Thus, [a federal statute] defines 'enterprise' by stating what it 'includes,' a word that normally operates to extend rather than limit.... [The Colorado statute], on the other hand, defines 'enterprise' by stating what it 'means,' which ... is a word of limitation."); Arnold v. Colo. Dep't of Corr. , 978 P.2d 149, 151 (Colo. App. 1999) ("[T]he word 'include' is ordinarily used as a word of extension or enlargement and is not definitionally equivalent to the word 'mean.' "); Childers v. State , 936 So.2d 585, 597 (Fla. Dist. Ct. App. 2006) ("[I]nclude indicates that what is to follow is only part of a greater whole.... By the use of the non-limiting term "includes," however, the list used to define 'person' is illustrative rather than exhaustive."). Like the cases enumerated above, the statute here identifies a general class of notice, and then extends it to more particular subclasses. It is illustrative, rather than exhaustive. See also Brian A. Garner, Garner's Dictionary of Legal Usage (3d ed. 2011) ("[I]ncluding is sometimes misused for namely. But it should not be used to introduce an exhaustive list, for it implies that the list is only partial.... 'the use of the word including indicates that the specified list ... is illustrative, not exhaustive.' "). Thus, permissible forms of notice under the statute are broader than those made in person or in writing. Such an interpretation permits criminal prosecution in circumstances other than those in which notice is given in person or in writing.
¶ 15 The partial dissent notes that the term "either ... or" is a term of exclusion and thus that the General Assembly intended to limit forms of notice only to that of in-person or written communication. However, the term "either ... or" is preceded by the term "includes," which is a term of extension and expansion. We conclude the terms that follow, in-person or written notice, are examples of the types of notice permissible under the statute.
¶ 16 We disagree with Patton's more narrow statutory interpretation, because it would exclude from punishment a person, as here, who had received notice by telephone that his or her credit card had expired or been revoked or cancelled. If the General Assembly had intended to limit the breadth of section 18-5-702(1) as Patton suggests, it would have used the word "means" instead of "includes." See James , 40 P.3d at 47.
¶ 17 To the extent the statute is ambiguous or unclear, our interpretation upholds the purpose of the statute, to prevent fraud in financial transactions, while acknowledging the complex and sophisticated nature of the crime involved: credit card fraud. See Hearings on H.B. 1284 before the H. Judiciary Comm., 54th Gen. Assemb., 1st Sess. (Feb. 7, 1984) (discussing rationale for law).
¶ 18 The People thus provided sufficient evidence to support a conclusion beyond a reasonable doubt that Patton received notice that his card was cancelled, revoked, or expired. The testimony of the Wells Fargo investigator was sufficient to enable the jury to infer that Patton was informed by telephone that his card was cancelled once he filed his fraud report. The jury could rely on the investigator's testimony concerning Well's Fargo's routine practice to infer that action consistent with that routine practice occurred in a particular instance. See CRE 406 ; see also Columbia Sav. v. Zelinger , 794 P.2d 231, 236 (Colo. 1990) (bank vice-president, although lacking personal knowledge about a particular transaction, was permitted to testify regarding the bank's routine practices and the significance of routine documents to prove the bank's intent in connection with a particular transaction); Bloskas v. Murray , 646 P.2d 907, 911 (Colo. 1982) (evidence of defendant doctor's routine practice admissible as sufficient circumstantial evidence that defendant acted consistently with his routine in fulfilling his duty to warn, even though there was no specific finding that he had in fact warned the patient). Thus, the investigator's testimony was sufficient to establish notice under the statute.
III. Imposition of Consecutive Sentences
¶ 19 The court imposed a sentence of six years in the custody of the Department of Corrections for theft and a consecutive three-year *1158 sentence for unauthorized use of a financial transaction instrument. At sentencing, the People argued that because different evidence was used to prove each charge, the trial court could impose consecutive sentences. The People maintained that the unauthorized use of the financial instrument was a separate act from the theft from the electronics store. Patton did not challenge the imposition of consecutive sentences at sentencing.
¶ 20 Patton now contends that the court committed plain error by imposing consecutive sentences because his crimes were based on identical evidence. We agree.
A. Standard of Review
¶ 21 A trial court's decision to impose consecutive sentences is reviewed for an abuse of discretion. People v. Glasser , 293 P.3d 68, 78 (Colo. App. 2011). A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, People v. Rath , 44 P.3d 1033, 1043 (Colo. 2002), and when it misconstrues or misapplies the law, People v. Henson , 2013 COA 36, ¶ 12, 307 P.3d 1135, 1137-38. The trial court's decision will thus be upheld "if there is any evidence in the record to support the findings that separate acts support each" conviction. Glasser , 293 P.3d at 78.
¶ 22 While the claim is unpreserved, we need not review the trial court's imposition of consecutive sentences for plain error because a defendant may raise a claim at any time that his or her sentence was not authorized by law. See People v. Stellabotte , 2016 COA 106, ¶ 42, 421 P.3d 1164, 1173 ; see also People v. Fransua , 2016 COA 79, ¶ 17, --- P.3d ----, ---- (citing Crim. P. 35(a) ), cert. granted , (Dec. 5, 2016).
B. Applicable Law
¶ 23 Generally, a trial court has discretion to impose consecutive or concurrent sentences. People v. Jurado , 30 P.3d 769, 772 (Colo. App. 2001). However, when a defendant is convicted of multiple crimes based on the same act or series of acts in the same criminal episode and the evidence supporting each conviction is identical, the sentences must be concurrent. § 18-1-408(3), C.R.S. 2016.
¶ 24 "To determine whether the evidence is identical, a court must decide whether the separate convictions were based on more than one distinct act and, if so, whether those acts were separated by time and place." Glasser , 293 P.3d at 79. "The mere fact that the offenses took place during one continuous criminal episode does not establish that they were supported by identical evidence." Jurado , 30 P.3d at 773. If the crimes have some common element of proof but the evidence supporting the convictions is not identical, concurrent sentences are not required. Id. ; see also Marquez v. People , 2013 CO 58, ¶ 18, 311 P.3d 265, 272. However, if the act that forms the basis of one charge cannot be logically separated from the act that formed the basis of the second, the acts are a part of a single episode, subject to concurrent sentences. Juhl v. People , 172 P.3d 896, 902 (Colo. 2007). Further, consecutive sentences are not permitted in interrelated crimes. "[P]roof of different crimes is interrelated if the proof of one crime forms a substantial portion of proof of the other." Marquez , ¶ 18, 311 P.3d at 272 (quoting People v. Rogers , 742 P.2d 912, 919 (Colo. 1987) ).
C. Analysis
¶ 25 It is undisputed that Patton's taking of the electronics from the store without paying for them was theft. Patton's use of the cancelled debit card to effectuate his purchases without payment was part and parcel of his theft from Ultimate Electronics. The unauthorized use of the financial instrument thus formed the basis of his theft. Proof of the unauthorized use of the card formed a substantial portion of the proof of the theft. The two crimes were therefore interrelated.
¶ 26 Nevertheless, the People argue that the unauthorized use of the card was an initial act of deception intended to defraud Wells Fargo, while the same use of the card was a distinct act to deprive the electronics store of its property. The People asserted in closing argument that the two incidents relied on "pretty similar" but distinct elements *1159 of proof; however, we conclude that the act of using the card to complete the sale cannot be logically separated from the act of theft. Because we conclude the convictions were supported by identical evidence, the trial court is "mandated by statute to impose concurrent rather than consecutive sentences." Juhl , 172 P.3d at 903. Thus, the court was not authorized by law to impose the consecutive sentences.
¶ 27 Therefore, we remand the case for concurrent sentencing.
IV. Amendatory Legislation
¶ 28 Patton committed his offenses in December 2009. Because the value of the items stolen was over $8000, he was charged with stealing items over $1000 but less than $20,000, which was a class 4 felony at the time. In 2013, the Colorado General Assembly amended the theft statute with an effective date of June 5. See Ch. 373, sec. 1, § 18-4-401, 2013 Colo. Sess. Laws 2195. Under subsection (2)(g) of the theft statute, theft in an amount greater than $5000 but less than $20,000 became a class 5 felony. § 18-4-401(2)(g), C.R.S. 2016.
¶ 29 Patton was sentenced in 2014. At sentencing, defense counsel told the court she had filed a motion seeking the benefits of the amended theft statute to reduce the offense from a class 4 to a class 5 felony, but the trial court had not ruled on the motion. At the close of sentencing, the sentencing judge also did not make a ruling.
¶ 30 Patton contends that he is entitled to the benefit of the amendatory legislation. We agree.
¶ 31 A division of this court has recently concluded when applying the same statute to this defendant that the theft amendment should apply retroactively to defendants seeking relief on direct appeal. See People v. Patton , (Colo. App. No. 14CA2359, 2016 WL 4254633, Aug. 11, 2016) (not published pursuant to C.A.R. 35(e) ); see also Stellabotte , ¶¶ 45-48, 421 P.3d at 1173-74. The Supreme Court has also held that amendatory legislation for crack cocaine sentencing under the Fair Sentencing Act of 2010 provides retroactive relief to offenders convicted but not yet sentenced when the statute took effect. See Dorsey v. United States , 567 U.S. 260, 132 S.Ct. 2321, 183 L.Ed.2d 250 (2012).
¶ 32 For the reasons set forth in Patton , Stellabotte , and Dorsey , we conclude the court erred in denying Patton the benefits of the amendatory theft legislation. This error was not harmless because it affects Patton's substantial rights. Therefore, we vacate the sentence and remand for reconsideration of sentencing under the amendatory legislation.
V. Value of Stolen Items
¶ 33 Patton contends that the court improperly entered a conviction for a class 4 felony against him without a finding of actual value by the jury, and that instead he should only be convicted of a class 1 misdemeanor. He also contends that under the amendatory legislation, his conviction should be reduced to a class 1 misdemeanor. While we agree that Patton should receive the benefits of the amendatory legislation and receive a lesser sentence based on the holding in Stellabotte , as discussed above, we disagree that he should stand convicted of a class 1 misdemeanor.
¶ 34 Patton was charged with theft for stealing items over $1000 but less than $20,000. At trial, the People presented evidence that Patton had stolen items exceeding $8000 in value. Patton did not contest the value of the items. While the jury found that Patton had committed a theft of more than $1000, it did not make a specific finding on the value of the stolen items either by verdict form or special interrogatory.
A. Standard of Review
¶ 35 Because Patton's claim is unpreserved, we will reverse the sentencing decision only if there was plain error. People v. Tillery , 231 P.3d 36, 53 (Colo. App. 2009). Plain error is "obvious and substantial" error that casts doubt on the reliability of the judgment. Id. at 56 ; see also United States v. Olano , 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). It must affect a defendant's substantial rights, Olano , 507 U.S. at 734, 113 S.Ct. 1770, and undermine the fundamental *1160 fairness of the sentencing proceeding, People v. Miller , 113 P.3d 743, 745 (Colo. 2005).
B. Applicable Law
¶ 36 The Sixth Amendment requires that every element of an offense be pleaded and proved to a jury beyond a reasonable doubt. Apprendi v. New Jersey , 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) ; Whitaker v. People , 48 P.3d 555 (Colo. 2002). "[A]ny fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Blakely v. Washington , 542 U.S. 296, 301, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) (quoting Apprendi , 530 U.S. at 490, 120 S.Ct. 2348 ); accord Lopez v. People , 113 P.3d 713 (Colo. 2005).
¶ 37 It is the duty of the trial court to instruct the jury properly on all matters of law, on any instructions that do not define all the elements of an offense, and on any instructions that require explanation to help the jury decide whether the elements have been established beyond a reasonable doubt. See People v. Cowden , 735 P.2d 199, 202 (Colo. 1987) ; see also Ramirez v. People , 682 P.2d 1181 (Colo. 1984). However, "[f]ailure to instruct properly on an element of a crime does not constitute plain error where that element is not contested at trial, or where evidence of the defendant's guilt is overwhelming." Cowden , 735 P.2d at 202.
¶ 38 Finally, as stated above, a division of this court has held that defendants should receive the benefits of amendatory legislation when they seek relief on direct appeal, their cases were pending when the amendment was enacted, and the amendment does not state that it applies to cases filed after a certain date or conduct occurring after a certain date. See Stellabotte , ¶¶ 45-48, 421 P.3d at 1173-74. If the classification of their conviction has changed under the statute, then they are to be sentenced according to those amended classifications. Id.
C. Analysis
¶ 39 We first address Patton's claim that the value of the items was not established at trial. Patton contends that "the value of the property is part of 'the offense charged,' " People v. Simpson , 2012 COA 156, ¶ 24, 292 P.3d 1153, 1157, and that "[t]he level of offense depends upon the proof of the value of the stolen property." People v. Smith , 121 P.3d 243, 248 (Colo. App. 2005). He asserts that because the value of the stolen electronics was not submitted to the jury, he can only be convicted of the lowest level of an offense. We disagree.
¶ 40 At trial, the People submitted undisputed evidence that the items stolen from Ultimate Electronics were valued at $8504.92. The jury was not instructed to determine the value of the stolen items, either by verdict form or special interrogatory. However, Patton did not contest the value of these items at trial. As in Cowden , "[t]he record demonstrates that the value of the property alleged to be stolen ... was not a controverted element of the offenses." 735 P.2d at 202-03. Thus, the "trial court's failure to instruct the jury as to the value was not plain error," and the conviction based on the evidence submitted at trial will not be disturbed. Id.
¶ 41 Patton also relies on Simpson and Smith to argue that the jury must find the value of the items stolen in order to convict him of a class 5 felony. However, neither decision supports his assertion. In Simpson , the court found that Simpson was entitled to a preliminary hearing on class 3 felony charges for theft, regardless of whether the value of the property taken was an element or an enhancer of the offense. 292 P.3d at 1153. The issue of value was thus irrelevant to the holding.
¶ 42 Smith , while more on point, is also distinguishable. In the trial court, the defendant was convicted of theft from a person, but the appellate court vacated that conviction. Smith did not dispute the other elements of the theft. Although the record reflected that Smith had stolen items valued at around $850, the jury only found Smith guilty of the theft from a person charge, which was a class 5 felony "without regard to the value of the thing taken" under the relevant statute. Smith , 121 P.3d at 248 (quoting *1161 § 18-4-401(5) ). In other words, the original charge did not consider the value of the thing taken as an element of the offense. Because the jury had only made a finding on the original offense, the court ruled that a conviction could only be entered for the lowest level of theft, the newly imposed conviction. Id. (citing Blakely , 542 U.S. 296, 124 S.Ct. 2531 ) (sentence may only be imposed based on facts found by a jury or admitted by defendant).
¶ 43 Here, Patton was charged with theft as a class 4 felony under the former statute, which was triggered when the value of the thing taken is above $1000 and below $20,000. Unlike in Smith , the offense originally charged here included a consideration of value. Based on the uncontroverted facts in the record, the jury convicted Patton of the offense charged because there was evidence that the value of the items stolen exceeded $8000. Because there was no dispute regarding the value of the stolen items, it was not plain error for the court to omit a special instruction on value to the jury.
¶ 44 We then turn to the effect of the amendatory legislation upon Patton's conviction. The General Assembly altered the theft statute and lowered the classification of theft, as relevant here, from a class 4 felony for items valued between $1000 and $20,000 to a class 5 felony for items valued between $5000 and $20,000. Patton's theft as established by the record was for items valued at more than $8000. Thus, his conviction falls under this provision of the revised statute.
¶ 45 We conclude that Patton should receive the benefits of amendatory legislation and receive a reduced sentence, but that his conviction should be for a class 5 felony. We thus vacate the sentence and remand the case for resentencing under the amendatory legislation in light of Stellabotte .
VI. Conclusion
¶ 46 The judgment of conviction for unauthorized use of a financial instrument is affirmed, the consecutive sentences are vacated, the felony theft sentence is vacated, and the case is remanded for resentencing consistent with this opinion.
Casebolt* , J., concurs
JUDGE DUNN concurs in part and dissents in part.

Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5 (3), and § 24-51-1105, C.R.S. 2016.